UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

FILED
APR 28 2017
Nora Paul
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CRIMINAL NO. 7:17-CR- 12- HL |
| v. | : |
| | : |
| CLINTON SCOTT BASS. | : |
| | : |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and CLINTON SCOTT BASS, hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Information in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant the attorney's understanding of the Government's evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the Government would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the Government's proof, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's



attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on <u>Booker</u>, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and their progeny. So Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A) Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information, which charges Defendant with Attempting to Receive and Transport Explosive Materials with Intent to Kill, Injure, or Intimidate, in violation of Title 18, United States Code, Section 844(d).

(B) Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant on Count One to a term of imprisonment of not more than ten (10) years, a fine of $250,000.00, or both, and a term of supervised release of not



2

more than three (3) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 (per count).

(C) Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Investigative Report and found by the Court to be the correct advisory guideline range.

(D) Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. Defendant understands and has discussed with Defendant's attorney that Defendant will have the opportunity to review the Presentence Investigative Report and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the Pre-sentence Investigative Report or the Court's rulings thereon will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with Defendant's attorney that after the Court determines the applicable guideline range of this case, the Court has the authority under certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of



sentencing.

(G) Defendant understands that ordinarily 18 U.S.C. § 3742 will, in certain cases, allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or other collateral review of Defendant's sentence in any court, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then Defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence. In the event that Defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.

Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in 18 U.S.C. § 3742(b). If, however, the United States Attorney appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

(H) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present Information as well as any and all criminal violations about which Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. Defendant understands that this agreement does not require Defendant to implicate any particular individual or individuals or to



"make a case," rather it requires Defendant to be truthful and to testify truthfully whenever called upon.

(I) Defendant and the Government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant.

(B) That he further agrees, if Defendant cooperates truthfully and completely with the Government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to Defendant's cooperation, to make the extent of Defendant's cooperation known to the sentencing court. If Defendant is not completely truthful and candid in Defendant's cooperation with the Government, Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and/or Section 5K1.1 of the Sentencing Guidelines warranting the filing of a motion at the time of sentencing



recommending a downward departure from the applicable guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion. In addition, should Defendant fail to cooperate truthfully and completely with the Government, or if Defendant engages in any additional criminal conduct, Defendant shall not be entitled to consideration pursuant to this paragraph.

(C)  Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the Government by Defendant in connection with Defendant's cooperation and as a result of Defendant's plea agreement to cooperate will not be used in determining the applicable guideline range. Further, the Government agrees not to bring additional charges against Defendant, with the exception of charges concerning the commission of an offense resulting in the death of, or serious bodily injury to (as defined in 18 U.S.C § 2246), another individual, based on any information provided by Defendant in connection with Defendant's cooperation, which information was not known to the Government prior to said cooperation. This does not restrict the Government's use of information previously known or independently obtained for such purposes.



(D) If Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that Defendant receive a downward adjustment in the advisory guideline range. But the decision whether Defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that Defendant has not accepted responsibility, including, but not limited to, denying Defendant's involvement, giving conflicting statements as to Defendant's involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under

U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigative Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and Defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

Defendant admits that the allegations contained in Count One of the Information are true and correct.

On August 4, 2016, Clinton Scott Bass, using a computer moniker (hereinafter Moniker #1) made contact with a law enforcement employee working as an Online Covert Employee (OCE) on Website #1. Website #1 is a hidden service Web site with a publicly-accessible marketplace. Bass, using Moniker #1, initially expressed interest in obtaining a bomb that could be attached to a vehicle and which would detonate when the vehicle door was either opened or closed. Bass advised the OCE that he was 100% serious and would definitely buy the product.

On March 27, 2017, Bass again contacted the OCE on Website #1 using Moniker #1. Bass sent several messages to OCE, including:

- "I will supply address. You mail package and when it is opened boom game over. Also please delete all messages between us."

- "Target is nobody special. Just a rat criminal."

- "If you have any advice like should I destroy this phone once completed and us both destroy all messages please let me know. Time is running out and I need this pos to get his bday present on time. Please let me know something as soon as possible so I can look elsewhere if you don't want the job."



On March 28, 2017, Bass switched to a different computer moniker (hereinafter Moniker #2) on Website #1. Using Moniker #2, Bass advised OCE the following: "I'm not going to be able to purchase...til tomorrow. Almost 9pm here...but no worries my friend will definitely have it to you tomorrow on my word."

On March 29, 2017, Bass paid for the mail bomb with virtual currency totaling approximately $550.00 U.S. currency. The virtual currency was sent by Moniker #2, to be held in escrow by Website #1 until the OCE delivered the mail bomb. Bass also provided a target name (hereinafter Victim #1, a.k.a., "J.L.," the identity of whom is known to the United States), as well as a residential address (hereinafter Victim Address #1) in Hahira, Georgia.

On or about March 30, 2017, the OCE advised Bass that the bomb would not be activated when it was shipped. Instead, once Bass received the explosive device, he would have to arm the mail bomb prior to delivery to its intended target.

On April 4, 2017, Bass provided an address (hereinafter Delivery Address) in Hahira, Georgia, as the location where he would like to receive the mail bomb so he could then activate and deliver it to the intended target. The Federal Bureau of Investigation (FBI) subsequently determined that Delivery Address is a vacant residence.

On April 13, 2017, law enforcement delivered a package (hereinafter "Outer Package") to the Delivery Address. The Outer Package contained a smaller package (hereinafter "Inner Package") which contained an inert explosive device and related equipment. Shortly thereafter, Bass arrived at the Delivery Address, picked up the Outer Package, and drove it back to his home.

That evening, Bass contacted the OCE on Website #1, writing: "Yeah man got it today. Look in trying to figure out best way to get it to him. Is it safe to mail it? If not no big deal I will



9

do something else. Just don't want to hit an innocent. I'm going to send u half the money right now and the other half after it go off. Only a few days my friend."

Approximately an hour later, Bass contacted the OCE again, writing, "Just opened it and it looks real good. . . I will mail it on Monday and you will get the rest Tuesday. Hope that you are ok with that. Thanks."

Subsequently, half of the virtual currency originally paid by Moniker #2 was released to the OCE by Website #1.

On Monday, April 17, 2017, at approximately 1:00am, Bass wrote to the OCE regarding Monday delivery of the Inner Package to Victim #1 and released the final payment of virtual currency to the OCE by Website #1.

At approximately 3:00am the same morning, Bass left his residence. Bass drove to the vicinity of Victim #1's address, and delivered the Inner Package to Victim #1's residence.

Law enforcement subsequently retrieved the Inner Package from Victim #1's residence and determined that Bass had followed the OCE's instructions regarding how to arm the Inner Package. Later that morning, Bass was arrested by the FBI.

In conclusion, the parties stipulate that the cross reference in § 2K1.3(c)(1)(A) applies. See also § 2X1.1 and § 2A2.1. The Government's position at this time is that, barring a reduction based on substantial assistance, as set forth above in Paragraph 4(B), it expects to ask for a sentence of 120 months. The Government takes this position – regardless of the applicability of the cross reference – given the seriousness of Defendant's actions and the United States' evaluation of the 18 U.S.C. § 3553 factors. However, because there is no statutory mandatory minimum, Defendant can argue for whatever sentence he feels is appropriate.



(8)
## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 28th day of April, 2017.

```
                          G. F. PETERMAN, III
                          UNITED STATES ATTORNEY

                    BY: _____
                          PETER D. LEARY
                          ASSISTANT UNITED STATES ATTORNEY
```

I, CLINTON SCOTT BASS, read this agreement or had this agreement read to me by my attorney, Jared S. Westbroek. I have discussed this agreement with my attorney, and I fully understand it and agree to its terms.

_____
CLINTON SCOTT BASS
DEFENDANT

I, Jared S. Westbroek, attorney for Defendant CLINTON SCOTT BASS, have explained the Information and the Government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
JARED S. WESTBROEK
ATTORNEY FOR DEFENDANT